```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MONTANA
                    MISSOULA DIVISION
    _____

JOSEPH PEPE and BONNIE
PEPE,
                                       CV 07-143-M-DWM-JCL
              Plaintiffs,

       vs.
                                       MEMORANDUM
BEKINS VAN LINES, LLC,

              Defendant.
    _____
```

## I.  INTRODUCTION

   Plaintiffs Joseph and Bonnie Pepe commenced this action by filing their Complaint in the Montana Fourth Judicial District Court on October 23, 2007.  Defendant Bekins Van Lines, LLC (Bekins) removed the action to federal court on November 27, 2007.

   The Pepes seek to recover compensation for damages to their personal belongings resulting from a fire allegedly caused by Bekins.  In 2006 the Pepes retained the services of Bekins, an interstate carrier, to transport their personal belongings from California to Montana.  On November 1, 2006, the Pepes' belongings were destroyed while they were in Bekins' possession.  Although Bekins has provided the Pepes with some compensation,

MEMORANDUM - Page 1

the Pepes allege Bekins is still liable for an additional $30,157.77 in damages.

On February 14, 2008, the Court issued an Order requiring the parties to file briefs regarding the Carmack Amendment to the Interstate Commerce Act at 49 U.S.C. § 14706, and its applicability to this case.  Bekins contends the Carmack Amendment provides the substantive law which controls the Pepes' claims.

## II.   DISCUSSION

Congress enacted the Carmack Amendment to establish uniformity and consistency with respect to interstate shipping and a carrier's liability for losses or damages suffered during shipping.  *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913).  The Amendment provides a uniform rule of liability exposure to an interstate carrier "for the actual loss or injury to the property[.]"  49 U.S.C. § 14706(a).  *See also Hughes Aircraft Co. v. North American Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992) (describing law as "a uniform national liability policy for interstate carriers").

### A.   Jurisdiction

Consideration of the Carmack Amendment's application to this case necessarily begins with a discussion of this Court's jurisdiction.  Since Bekins removed this case to federal court, the issue of jurisdiction is governed by the federal removal

statutes at 28 U.S.C. § 1441 et seq. Federal removal jurisdiction is proper if federal jurisdiction existed over the suit as originally brought by the plaintiff. 28 U.S.C. § 1441(a)(b); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

The existence of federal question jurisdiction is governed by the "well-pleaded complaint rule[.]" *Caterpillar*, 482 U.S. at 392. The rule recognizes that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id*.

The Pepes' Complaint advances claims under Montana law. They allege Bekins is liable for common law negligence. Additionally, the Pepes allege they contracted with Bekins and that Bekins breached the contract by failing to pay damages under the contract. Therefore, under the well-pleaded complaint rule the Pepes' state law negligence and contract claims, standing alone, do not provide a basis for federal jurisdiction over this case.

Under an exception to the well-pleaded complaint rule, however, a federal court may have jurisdiction over allegations asserting only a state law claim "[w]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption[,]" thereby converting the state law claim to a federal claim for the purpose of determining jurisdiction and the

propriety of removal. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)). The preempted state law claim is thereby considered to be a federal claim. *Hall v. North American Van Lines, Inc.*, 476 F.3d 683, 687 (9th Cir. 2007).

The Carmack Amendment constitutes one of the few federal statutes which displaces state law through complete preemption. *Hall*, 476 F.3d at 687. "It is well settled that the Carmack Amendment is the exclusive cause of action for interstate-shipping contract claims alleging loss or damage to property." *Id*. at 688. It completely preempts any contract claim alleging an interstate carrier caused loss or damage to property during the shipping process, and provides jurisdiction over claims originally raised as contract claims under state law. *Id*.

Notwithstanding the allegations of their Complaint, the Pepes now concede that their exclusive cause of action against Bekins for the loss and damage to their property is under the Carmack Amendment. Therefore, complete preemption provides jurisdiction over this action.

B. **Limitation of Liability**

The Carmack Amendment permits an interstate carrier to limit its liability by an agreement with, or a waiver by a shipper. 49 U.S.C. § 14706(c)(1)(A). To make any limitation on liability effective a carrier must

> (1) maintain a tariff in compliance with the requirements of the Interstate Commerce Commission; (2) give the shipper a

MEMORANDUM - Page 4

>  reasonable opportunity to choose between two or more levels
>  of liability; (3) obtain the shipper's agreement as to his
>  choice of carrier liability limit; and (4) issue a bill of
>  lading prior to moving the shipment that reflects any such
>  agreement.

*Hughes Aircraft*, 970 F.2d at 611-12.  The carrier has the burden of establishing it complied with each of these four conditions. *Id*. at 612.

The parties dispute whether all four of the above-quoted conditions are satisfied in this case.  The Pepes concede the first two conditions exist; the tarriff was available to the Pepes, and they had the opportunity to choose between two or more levels of liability.  The Pepes argue, however, that the third and fourth conditions are not satisfied because they did not agree to a limit on Bekins' liability, and Bekins did not issue a proper bill of lading reflecting any agreement as to its limited liability.  Specifically, the Pepes assert that they believed they agreed to an insurance policy, not a limitation on liability.

By requiring an "agreement" with the shipper to limit liability, Congress intended that the "shipper should agree in the same sense that one agrees or assents to enter into a contractual obligation." *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1417 (7th Cir. 1987) (quoting *Chandler v. Aero Mayflower Transit Co., Inc.*, 374 F.2d 129, 135 (4th Cir. 1967)).

>  One who signs a contract in the absence of fraud or deceit
>  cannot avoid it on the grounds that he did not read it or

MEMORANDUM - Page 5

>    that he took someone else's word as to what it contained.
>    But an agreement signed under the belief that it is an
>    instrument of a different character is void, and the failure
>    to read an instrument is not negligence per se but must be
>    considered in light of all surrounding facts and
>    circumstances.

*Id*.

The Pepes contend they did not enter an enforceable agreement with Bekins to limit its liability, and that any agreement is void under *Hughes*, supra, because they thought they were agreeing to an insurance policy, an instrument of a different character.  They thought they were signing an insurance policy because the terminology in the documents included terms such as a "valuation premium", a "deductible" amount, "coverage", and "full replacement value protection".  They assert these terms are indicative of an insurance policy.

The Pepes' contention that they thought they were signing an insurance policy constitutes a unilateral mistake on their part as it is unsupported by the provisions of the documents they signed.  The Interstate Order for Service Bonnie Pepe signed on August 31, 2006, states that the protection the Pepes agreed to was "A TARIFF LEVEL OF CARRIER LIABILITY.  IT IS NOT INSURANCE."[1]  The same document further states the following with respect to the Pepes' selection of the level of protection for their belongings:

---

[1] Bekins' Brief, Ex. A.

MEMORANDUM - Page 6

> <u>You must select, in your own handwriting</u>, one of the
> following two options for your shipment.  The option you
> select establishes your mover's maximum liability for your
> goods subject to rules contained in your mover's [illegible
> word].[2]

As a matter of law, the Pepes' asserted unilateral mistake about the provisions of the agreement they signed is not a valid basis for voiding a liability limitation agreement under the Carmack Amendment.  *Hughes*, 829 F.2d at 1418-19.  The Pepes do not argue that any exception to this unilateral mistake rule applies under the facts of this case.

Furthermore, the above-quoted provision of the Interstate Order for Service constitutes the Pepes' agreement to limit Bekins' liability.  The Pepes declared that the value of their shipment was $60,000, and by selecting the full replacement value option they agreed that $60,000 was Bekins' "maximum liability" for their goods.

The Pepes next contend Bekins did not issue an adequate bill of lading reflecting an agreement to limit its liability.  They contend the language of "Option 1:  Full Replacement Value Protection" which they selected does not contain any waiver or limitation of their right to recover the full value of the damages they sustained in the fire giving rise to Bekins' liability.

---

[2] *Id*. (emphasis in original).

MEMORANDUM - Page 7

Although the text of Option 1 does not contain a waiver or limitation of liability, the Pepes' argument ignores the "maximum liability" language of the Interstate Order for Service quoted above.  That provision expressly states that the option selected "establishes your mover's maximum liability".

In further support of the existence of a bill of lading reflecting an agreement, the "Interstate Order for Service" issued by Bekins constitutes a "receipt" in satisfaction of the fourth condition for a valid limitation of liability.  *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 779 (5th Cir. 2003) (stating that the fourth condition requires either a receipt or a bill of lading).  A bill of lading is both a receipt and a contract.  *New York Cent. R. Co. v. Mutual Orange Distributors*, 251 F. 230 (9th Cir. 1918).

Based on the foregoing, the Court concludes the fourth condition of a valid limitation of liability is satisfied in this case.  Bekins' Interstate Order for Service constitutes a receipt or bill of lading, and it reflects Pepes' agreement that the $60,000 value the Pepes' placed on their goods was Bekins' "maximum liability".

Accordingly, the Court issues this Memorandum to resolve the issue of whether the Carmack Amendment controls the Pepes' claims.  The limitation of Bekins' liability to which the Pepes agreed in the provisions of the Interstate Order for Service is

an effective limitation under the authority of the Carmack Amendment and *Hughes Aircraft*.  The parties have not, however, filed any dispositive motion at this time.  Therefore, the effect of the limitation on the amount of damages to which the Pepes are entitled will have to be resolved in further proceedings.

DATED this 12th day of May, 2008.

                                              /s/ Jeremiah C. Lynch
                                              Jeremiah C. Lynch
                                              United States Magistrate Judge